UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERRARD SANTIAGO,<br>*Defendant*. | No. 3:23-cr-49 (JAM) |

**ORDER DENYING MOTION TO SUPPRESS**

Defendant Jerrard Santiago has moved to suppress statements he made to law enforcement officers on the ground that they were involuntary and that they were elicited without a knowing and voluntary waiver of his *Miranda* rights. Following an evidentiary hearing, I will deny the motion to suppress.

BACKGROUND

A federal grand jury has charged Santiago with unlawfully distributing narcotics including fentanyl, heroin, and cocaine on various dates in May 2021 and February 2023.[1] Santiago has now moved to suppress statements he made on March 21, 2022 to agents of the Drug Enforcement Administration (DEA).[2]

In an affidavit accompanying his motion to suppress, Santiago attests that he is a "long-time user of the drug, Phencyclidine (PCP)" and that he was "under the influence of Phencyclidine (PCP) on March 21, 2022."[3] Santiago's motion to suppress contends that, because

---

[1] Doc. #1 at 1-2.
[2] Doc. #22 at 1. Santiago's motion to suppress also seeks suppression of statements he made to law enforcement on a later date (March 13, 2023). But in view of the government's position that it will not seek to introduce in its case-in-chief Santiago's statements that he made on that later date, there is no need for me to resolve the admissibility of those statements at this time. If the government believes at trial that it has grounds to use such statements for purposes of cross-examination or its rebuttal case, the government shall advise the Court prior to doing so in order for the Court to determine whether such statements may be properly used. In addition, to the extent that there was testimony and evidence at the suppression hearing about the later interview of Santiago on March 13, 2023, I disregard it for purposes of this ruling and base this ruling solely on the evidence concerning the events of March 21, 2022.
[3] Doc. #22-1 at 1 (¶¶ 3-4).

1

he was under the influence of PCP when he made statements to the DEA, his statements were involuntary and that he did not knowingly and voluntarily waive his *Miranda* rights.

I conducted an evidentiary hearing and make the following factual findings. The DEA was conducting an investigation of a drug overdose death that occurred at the Mohegan Sun casino in Uncasville, Connecticut on May 18, 2021. The DEA's investigation focused on Santiago, in part because of video surveillance from the casino that showed Santiago in proximity to the overdose victim. Because the casino had previously barred Santiago from its property, the Mohegan Tribal Police eventually secured an arrest warrant against Santiago for trespassing on the property of the casino.

The DEA came up with a plan to interview Santiago on the morning of March 21, 2022 by means of participating in the execution of the trespassing arrest warrant. Santiago was arrested outside his home in New Haven and then transferred in handcuffs to the backseat of a DEA vehicle for transport to the Mohegan police department to be booked on the warrant. DEA Special Agent Keith Warzecha was in the driver's seat of the vehicle, and DEA Special Agent Peter Borysevicz was in the front passenger seat.

Soon after Santiago was transferred to the DEA vehicle, Agent Warzecha read him his full *Miranda* rights from a standardized DEA wallet card and asked him: "Do you understand?" and "Are you willing to answer some questions?"[4] Both Agents Warzecha and Borysevicz credibly testified that Santiago responded that he understood his rights and that he wished to answer questions. They also credibly testified that Santiago appeared to understand them and not to be under the influence of any substances.

Specifically, Agent Warzecha testified that Santiago was walking normally (albeit with a

---

[4] Govt. Ex. #1 (wallet card).

limp) and had no difficulty getting into the DEA vehicle. He further testified that during the car ride Santiago was lucid and articulate, that he responded to questions in a logical fashion, and that he did not fall asleep or drift off. According to Agent Warzecha, Santiago did not claim that he was under the influence of drugs, and there was no indication from his demeanor that he was under the influence of drugs.

Agent Warzecha further testified that when they arrived at the Mohegan police department, Santiago said he was willing to be interviewed in a department interview room. According to Agent Warzecha, Santiago continued to be responsive to questions, articulate, and very detailed. Near the end of the interview Santiago signed a form consenting to the search of his cellphone.[5]

Agent Borysevicz credibly testified to the same effect as Agent Warzecha. He testified that Santiago's demeanor in the vehicle was cooperative, coherent, and normal, that his answers to questions were responsive, that he did not fall asleep or drift off, and that there was no indication that he was under the influence of drugs.

Detective Cody Floyd of the Mohegan police credibly testified that when the DEA arrived at the police department, Santiago appeared to be fine, was walking without difficulty, and did not seem to be disoriented or stumbling. The DEA agents believed that the interview of Santiago at the Mohegan police department would be video-recorded, but the police department's recording equipment did not properly work to produce a video or audio of the interview. Subsequent efforts to recover a useable recording of the interview were unsuccessful.

## DISCUSSION

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal

---

[5] Govt. Ex. 2 (consent to search form).

case to be a witness against himself." U.S. Const., amend. V.[6] "The right bars police from coercing involuntary statements from individuals, and applies without regard to whether the person is in custody when statements are so coerced." *Mara v. Rilling*, 921 F.3d 48, 77 (2d Cir. 2019). "When a person is unconscious or drugged or otherwise lacks capacity for conscious choice, a confession cannot be voluntary." *United States v. Taylor*, 745 F.3d 15, 24 (2d Cir. 2014).

Moreover, in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court famously ruled that the prosecution may not use a defendant's statements against him at trial if the statements were the result of custodial interrogation and if the police did not employ appropriate procedural safeguards to protect the privilege against compelled self-incrimination. In particular, the police must warn a suspect in custody of the following rights before subjecting the suspect to interrogation: "[1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Florida v. Powell*, 559 U.S. 50, 59-60 (2010) (quoting *Miranda*, 384 U.S. at 479).

A waiver of *Miranda* rights may be express or implied by a defendant's course of conduct. "[A] suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Berghuis v. Thompkins*, 560 U.S. 370, 388-89 (2010)

The prosecution bears the burden of proving that proper *Miranda* warnings were given and that the defendant knowingly and voluntarily waived his *Miranda* rights. *See United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019). The "waiver must be voluntary in the sense that it was

---

[6] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

4

the product of a free and deliberate choice rather than intimidation, coercion, or deception, and must be knowing in the sense that it was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Ibid.*

The Second Circuit has instructed that a court should "look at the totality of circumstances surrounding a *Miranda* waiver and any subsequent statements to determine knowledge and voluntariness." *United States v. Mendonca*, 88 F.4th 144, 164 (2d Cir. 2023). "Those circumstances generally fall into three categories: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Ibid.*

Santiago's argument for suppression focuses on the first of these three categories: the characteristics of the accused. He argues that, because he was under the influence of PCP, his statements on March 21, 2022 were involuntary and his *Miranda* waiver was not knowing and voluntary. But the government persuasively established by means of the testimony of Agents Warzecha and Boysevicz that Santiago was alert and responsive throughout their encounter with him on March 21, 2022, and that there was no indication that by reason of any use of PCP he was unable to understand what was happening or that his will was overborne. The agents' testimony was corroborated in part by the testimony of Detective Floyd with respect to his observations of Santiago's demeanor after he arrived at the police department.

The only evidence that Santiago was under the influence of PCP on March 21, 2022 is Santiago's affidavit. But the affidavit is conclusory, stating only in the most general terms that Santiago was a "long-term user" of PCP and that he was "under the influence" of PCP on March 21, 2022. It does not describe how much PCP he may have taken on that day or what effect the dosage he took had on his ability to understand and to control his actions. Without such particular timing and dosage details, Santiago's claim to have been under the influence is not

5

plausible even if I were to credit his general claims about the duration of a PCP high and about how the effects of PCP vary with dosage.[7]

Santiago points to evidence that the DEA attempted a controlled purchase transaction from him in January 2023 that Santiago could not complete due to his level of intoxication.[8] But the fact that Santiago was not in his right mind on one day in January 2023 says little about whether he was in his right mind when he was interviewed by the DEA agents several months earlier on the morning of March 21, 2022.

The facts of this case bear no resemblance to the facts in *United States v. Taylor*, *supra*. The defendant in *Taylor* "was largely stupefied when he made his post-arrest statements, as confirmed by the testimony of the law enforcement agents and the pretrial services officer who interviewed him, and by the evaluations of staff psychologists at the Metropolitan Correctional Center." 745 F.3d at 20. The "agents and officer testified that Taylor fell asleep repeatedly during questioning and was only intermittently alert." *Ibid.*

Santiago further complains that there was no audio or video of his interrogation at the Mohegan police department. But the evidence showed that the recording equipment malfunctioned through no fault or design of the DEA agents who conducted the interview. Moreover, Santiago does not cite any precedent that requires an audio or video recording of a defendant's statement in order for the statement to be admissible at trial.

Santiago faults the DEA for failing to have him sign a form to acknowledge the waiver of his *Miranda* rights. But a waiver of *Miranda* rights may be valid even if it has not been reduced

---

[7] Doc. #22 at 12 (citing an internet source, healthline.com, for the proposition that "PCP effects 'last from 6 to 24 hours but linger up to 48 hours in some people'" and that "[a]n individual on PCP may 'feel euphoric, floaty, and disconnected from [their] body and surroundings'" and that "'[a]s users increase the dose, the effects get more intense, leading to hallucinations and erratic behavior'").
[8] Doc. #22 at 11-12.

6

to writing. *See United States v. Spencer*, 995 F.2d 10, 12 (2d Cir. 1993) (*per curiam*); *United States v. Booth*, 583 F. Supp. 3d 545, 553 (S.D.N.Y. 2022); *United States v. Chavez*, 2015 WL 1650838, at *7 (D. Conn. 2015).

Yet a court may certainly consider the absence of a written waiver form. The fact that law enforcement agents might easily have sought to obtain a written waiver but strategically chose not to do so may be good reason to treat with skepticism a law enforcement agent's claim that proper oral *Miranda* warnings were given and that there was a knowing and voluntary oral waiver of *Miranda* rights.

Multiple federal appeals courts have recognized that written *Miranda* waiver forms provide "strong" evidence that a defendant has voluntarily waived his *Miranda* rights. *See, e.g., United States v. Smith*, 21 F.4th 510, 517 (8th Cir. 2021); *United States v. Carpentino*, 948 F.3d 10, 26 (1st Cir. 2020); *United States v. Crumpton*, 824 F.3d 593, 608 (6th Cir. 2016); *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009).

The two seasoned DEA agents who testified at the suppression hearing had no coherent answer when I asked them why they did not seek to obtain a written *Miranda* waiver. After all, this is not a case where it would have been impracticable for the DEA agents to seek a written waiver. To the contrary, the agents hatched a careful plan to stage an interview of Santiago and knew well in advance that they would be taking him into their custody and asking him to waive his *Miranda* rights. Indeed, when the agents wanted to search Santiago's cellphone, they produced a written form for him to review and sign. It makes no sense why they did not present a similar written form for Santiago to be advised of and to waive his *Miranda* rights.

The agents attested to a longstanding practice of the DEA (at least in Connecticut) not to seek written *Miranda* waivers. But this appears to be an archaic practice that needlessly

7

encourages the litigation of suppression motions to contest the validity of *Miranda* waivers and that tends to undermine confidence in the integrity of law enforcement. As another judge has observed in a similar context, "the best practice would have been to execute a *Miranda* form with Defendant," because "[t]his can, in some circumstances, prevent the need for unnecessary motion practice and disputes concerning whether *Miranda* rights were given or waived." *United States v. Williams*, 635 F. Supp. 3d 333, 338 (D.N.J. 2022). Indeed, "the preferred practice would include both an oral recitation of the required *Miranda* warnings coupled with the delivery of a written explanation thereof to the accused and the request that he execute a legally sufficient waiver prior to the commencement of custodial interrogation." *United States v. Sledge*, 546 F.2d 1120, 1122 (4th Cir. 1977) (*per curiam*).

So far as I know, the FBI has long instructed its agents to present *Miranda* forms in writing and to seek a suspect's written acknowledgement of his understanding and choice to speak with law enforcement agents. *See, e.g., North Carolina v. Butler*, 441 U.S. 369, 370-71 (1979). More generally, "[n]ot long after the Supreme Court decided *Miranda v. Arizona*, written waivers of constitutional rights became a standard part of law enforcement practice," and "waiver forms are common in the context of custodial interrogations," and "[m]ost police departments use them." Nancy Leong & Kira Suyeishi, *Consent Forms and Consent Formalism*, 2013 Wis. L. Rev. 751, 768 (2013). It is hard to believe that what has long been good enough for the FBI and most police departments nationwide is not good enough for the DEA.

In any event, I have fully considered the fact that the DEA agents chose not to seek a written *Miranda* waiver. Although this weighs against the government, I conclude in light of the other evidence that the government has carried its burden to prove that Santiago's statements to DEA agents on March 21, 2022 were voluntary and that he knowingly and voluntarily waived

8

his *Miranda* rights. Accordingly, I will deny the motion to suppress.

## CONCLUSION

For the reasons set forth in this ruling, the Court DENIES defendant Jerrard Santiago's motion to suppress (Doc. #22).

It is so ordered.

Dated at New Haven this 2d day of January 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge